❏ Original      ❏

CLERK'S OFFICE
A TRUE COPY
Oct 07, 2022
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| In the Matter of the Search of | ) | Case No. **22-M-544 (SCD)** |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | |
| Records and Information associated with the Cellular Device assigned call number 414-254-8676 (the "Target Cell Phone"), that is in the custody or control of US Cellular, as further described in Attachment A. | ) ) ) ) | Matter No. 2022R00355 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

     See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

     See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before    10-21-22    *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Hon. Stephen C. Dries  .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:    10-7-22 1:45 pm      *Stephen C. Dries*
                                                   *Judge's signature*

City and state:   Milwaukee, Wisconsin            Honorable Stephen C. Dries, U.S. Magistrate Judge
                                                             *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**
**Matter Number 2022R355**

1. Records and information associated with the cellular device assigned call number **414-254-8676** (referred to herein and in Attachment B as the "Target Cell Phone"), that is in the custody or control of US Cellular referred to herein and in Attachment B as the "Service Provider") a wireless telephone service provider headquartered at 8410 W. Bryn Mawr Avenue, Chicago, Illinois 606631.

2. The Target Cell Phone.

Case 2:22-mj-00544-SCD   Filed 10/07/22   Page 3 of 42   Document 1

**ATTACHMENT B**
**Particular Things to be Seized**
**Matter Number 2022R355**

**I.      Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.   The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from January 1, 20221 to present:

   i.   Names (including subscriber names, usernames, and screen names);

   ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.   Local and long-distance telephone connection records;

   iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.   Length of service (including start date) and types of service utilized;

   vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Page 2

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or

Page 4

with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.** This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

### III.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of possession of a machinegun, distribution and possession with intent to distribute controlled substances, and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 18 United States Code Section 920(o) and Title 21, United States Code, Sections 841 and 846, which have been committed by Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Savanna WILLIAMS, Daniel RODRIGUEZ-PEREZ, Brandon M. NICHOLS, Antonio E. HOWARD, Tasha M BROWN ,and other identified and unidentified subjects during the period of January 1, 2022 to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

Page 5



# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Records and Information associated with the Cellular Device assigned call number 414-254-8676 (the "Target Cell Phone"), that is in the custody or control of US Cellular, as further described in Attachment A.

)
)
)
)
)

Case No. **22-M-544 (SCD)**
Matter No. 2022R00355

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Possession, distribution, and conspiracy to possess with the intent to distribute controlled substances. |
| 18 U.S.C. § 920(o) | Possession of a machinegun. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

DEA TFO Aaron Hoppe
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone *(specify reliable electronic means).*

Date: 10-7-22

City and state: Milwaukee, Wisconsin

_____
*Judge's signature*

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**
**Matter Number 2022R355**

I, Aaron Hoppe, a Training Field Officer (TFO) with the Drug Enforcement

Administration (DEA), being first duly sworn, hereby depose and state as follows:

## I.      INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal

Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location

of the cellular telephone assigned call numbers **414-254-8676** (the "Target Cell Phone"), who

service provider is US Cellular ("Service Provider") a wireless telephone service provider

headquartered at 8410 W. Bryn Mawr Avenue, Chicago, Illinois 606631. The Target Cell Phone

is described herein and in Attachment A, and the location information to be seized is described

herein and in Attachment B.

2.      In this application, the United States seeks (1) historical cell-site location

information; (2) historical precision location information; (3) prospective, real-time cell-site

location information; (4) prospective, real-time precision location information (i.e., E-911 Phase

II data and GPS); and (5) subscriber information and other historic non-content records and

information.

3.      Because this warrant application seeks the prospective collection of information,

including cell-site location information, that may fall within the statutory definitions of

information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3)

& (4), I also make this affidavit in support of an application by the United States of America for

an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen

registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing,

1

routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

4.	I have been a law enforcement officer since May 30, 2007.  I am currently assigned to the Waukesha County Sheriff's Department Detective Bureau.  I have been assigned to a Federal Drug Task Force (Milwaukee HIDTA) and have been assigned to the Waukesha County Metro Drug Unit in 2012-2013, 2015-2017, and from 2022-Present.  I have been a part of hundreds of state and federal investigations related to drug activity.

5.	I have received extensive training on the investigation of death investigation, narcotics investigation, cell phone analytics, and I am currently a member of the Board of Directors for the Wisconsin Association of Homicide Investigation.

6.	I have conducted investigation ranging from death, drug, property, and child exploitative crimes by analyzing cell phone data including tower usage, call activity, and cellular activity while trying to pinpoint certain locations of suspects and/or victims.  I know that when conducting an investigation into many drug investigations, and drug related death investigations that the cellular phone data will be a key piece of evidence based on my training and experience. Individuals who sell and use narcotics will mainly utilize their cell phone to set up a transaction for narcotics utilizing their cellular phone or a special application downloaded on their phone.  I know it is common practice for most people to rely heavily on the use of cellular telephones or electronic devices for many aspects of their daily lives. People commonly use cellular telephones or electronic devices to send and receive text messages, make voice calls, interact on social media, store contact information, store personal identifying data, maintain calendars or agendas, utilize maps or GPS functions, access the internet, and take photographs and videos.

Page 2

7.      I have received training in the investigation of unlawful possession of firearms and possession of firearms by prohibited persons, as well as drug trafficking and related offenses. I have been trained regarding these offenses and has arrested individuals for federal firearms related offenses, as well as drug trafficking offenses. I have also investigated drug trafficking offenses at the state and federal level, including violations of Title 18, United States Code, Section 922(o) and Title 21, United States Code, Sections 841 and 846. I know from training and experience that those that commit crimes commonly communicate, photograph, videotape, and organize using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media.

8.      I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

9.      I have participated in the execution of numerous search warrants in which weapons, narcotics, and/or evidence of drug trafficking were seized in violation of state and federal laws. I am familiar with the different types and calibers of firearms and ammunition commonly possessed for illegal purposes, as well as the methods used to conduct narcotics trafficking. I have had a variety of formal, informal, and on the job training in the investigation of illegal firearms

Page 3

possession firearms trafficking, and drug trafficking. Additionally, I am familiar with street name(s) of firearms, controlled substances, and respective related topics, as well as has knowledge of the use of money laundering to conceal ill-gotten money.

10.     Information contained in this affidavit was either obtained directly by me or by other investigators who I believe to be truthful and credible. The facts in this affidavit come from personal observations, training and experience, and information obtained from other investigators and witnesses.

11.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

12.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances and possession of a machinegun, violations of Title 18 United States Code Section 920(o) and Title 21, United States Code, Sections 841 and 846, have been committed by Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Savanna WILLIAMS, Daniel RODRIGUEZ-PEREZ, Brandon M. NICHOLS, Antonio E. HOWARD, Tasha M BROWN and other identified and unidentified subjects. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## II.     PROBABLE CAUSE

### A.  BACKGROUND AND DEBRIEF OF CONFIDENTIAL SOURCES

13.     Beginning in July 2022, Drug Enforcement Agency (DEA) and the Waukesha Metro Drug Unit, hereinafter referred to as "Investigators," began investigating an armed drug trafficking organization (ADTO) operating in the Eastern District of Wisconsin (WI) which

involves Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Savanna WILLIAMS, Daniel RODRIGUEZ-PEREZ, Brandon M. NICHOLS, Antonio E. HOWARD, Tasha M BROWN and other identified and unidentified subjects. Through confidential sources, undercover controlled buys, physical surveillance, and electronic surveillance investigators have learned this ADTO sells fentanyl, purported to be heroin, methamphetamines, cocaine, ghost guns, and switches (device which converts a semi-automatic firearm into a full-automatic firearm). Investigators also determined that members of the ADTO utilizing multiple residences and multiple vehicles, including rental vehicles, to store and distribute their narcotics throughout the Eastern District of Wisconsin and travel out of state to obtain the controlled substances and firearms.

14.     On July 1, 2022, a Confidential Source (CS) contacted investigators and stated that he/she has knowledge that Azjuan K. MERIWETHER is selling high quantities of heroin, which MERIWETHER told CS is actually "feti, methamphetamine, cocaine, and "ghost" guns which are untraceable along with switches. Based on my training, experience, and investigation into this ADTO, I understand "feti" to mean fentanyl, which was also verified by CS.

15.     CS indicated that he/she knew that MERIWETHER went buy the "rapper" name "Chef Don Juan" and had videos posted on YouTube.  I reviewed a YouTube video of "Chef Don Juan" and observed an individual identified as MERIWETHER in the video along with two other individuals. Each individual in the video is handling a handgun or weapon, some with an extended magazine clip and one with a drum magazine.

16.     CS further indicated MERIWETHER's had a social media account with Instagram and provide an account name of "thereal_chefdon92".  Law enforcement observed MERIWETHER's account of "thereal_chefdon92".  MERIWETHER's accounts contained several photos, videos, and music videos of himself, consistent that the account did in fact belong

Page 5

WERIWETHER.

17.     The CS indicated that he/she has known MERIWETHER for several years.  The CS indicated that MERIWETHER had been arrested previously for a heroin related death investigation in Waukesha County, but the case had been dismissed.  I confirmed that MERIWETHER was charged in Waukesha County Case 2021CF296 with one count of first-degree reckless homicide on February 17, 2021, but the case was dismissed on July 21, 2021.

18.     The CS indicated that MERIWETHER sells guns, including "ghost guns", which based on my training and experience are guns which are purchased pre-assembled and are later assembled and are in fact a functioning weapon, but these pre-assembled weapons do not have serial numbers associated and are untraceable.  In addition, MERIWETHER sells switches for these guns, which based on my training and experience is a small part that is affixed to the weapon providing automatic fire capabilities on what would normally be a semi-automatic weapon.  This provides the individual utilizing the weapon with the opportunity to fire a large amount of ammunition in a short time period.

19.     CS stated that MERIWETHER is known to rent hotel rooms in "high class" hotels and use those rooms to cut and package the illegal narcotics that he purchases in large quantities and prepares them for delivery in the area.  The CS also indicated that there is a "barber shop" in the area of 39th and North in Milwaukee, WI where MERIWETHER and his "crew" of "workers" cut and package illegal narcotics there.  The CS stated that there are a large number of handguns and long guns at the "barber shop" and indicated that the video that was observed on YouTube was produced there.

20.     The CS stated that on July 1, 2022, he/she had met with MERIWETHER. MERIWETHER was in possession of several hundred grams of heroin/fentanyl and at least one

Page 6

pound of methamphetamine. The CS took pictures of the product along with a vehicle operated by MERIWETHER, and the residence where CS met with MERIWETHER.

21.     CS stated that he/she had set up an anticipated transaction of 50 grams of heroin in exchange for $2,500.00 in United States Currency. The planned transaction was to take place on July 5, 2022, in the Waukesha County Area. The CS indicated that he/she had contacted MERIWETHER utilizing a cell phone number for MERIWETHER identified as 414-999-6172.

22.     I queried 414-999-6172 using a reliable law enforcement database, which identified the mobile provider as T-Mobile USA.

23.     I also reviewed Wisconsin Department of Transportation (DOT) Photos, Waukesha County Booking photos, and the YouTube video of "Chef Don Juan" and determined the information provided by the CS is in fact regarding the subject identified as Azjuan K. MERIWETHER.

24.     CS information is credible and reliable, CS has given information concerning individuals involved in illegal activities which has been independently verified through this investigation. The information has been verified through controlled buys, video recordings obtained during the controlled buys, queries through law enforcement databases, and surveillance. CS is cooperating with law enforcement for consideration on pending criminal drug charges in Waukesha County as well as previous drug charges in Kenosha County. CS has no arrests or convictions relating to dishonesty but has had past arrests or convictions for felony drug offenses and other felony bodily harm offenses.

**B.  UNDERCOVER CONTROLLED BUYS WITH THE ARMED DRUG TRAFFICKING ORGANIZATION AND IDENTIFICATION OF MEMBERS**

25.     Generally, during the below listed controlled buys of controlled substances the CS

placed a recorded phone call and/or sent recorded text messages to the target, captured audio and video of the controlled purchase, was followed to and from the controlled purchase location, was searched before and after the controlled purchase with no drugs, money, or weapons located, provide pre-recorded funds for the purchase of the controlled substance, debriefed after the controlled purchase, and the above evidence and statements reviewed and verified by law enforcement. Additionally, the controlled substances were all weighed and tested positive for the listed substance using Nark II test kits following the printed instructions and the target was identified by the CS through photographs and verified by investigators through DOT photographs, booking photos, and social media.

**a. First Undercover Transaction with MERIWETHER and WILLIAMS using 414-999-6172 – July 5, 2022**

26.     On Tuesday, July 5, 2022, CS coordinated a purchase of approximately 50.4 grams of heroin from MERIWETHER for $2,500. The CS stated that he/she had contacted MERIWETHER prior to and during the transaction using telephone number 414-999-6172. The transaction took place at 12621 West North Avenue, Brookfield, Wisconsin. At approximately 11:29 a.m. CS met with MERIWETHER inside his black Mazda, bearing Wisconsin license plate AGJ-7529. Also, in the front passenger seat of the Mazda was MERIWETHER's girlfriend and mother of his child, who was later identified as Savanna Williams. Once inside the vehicle, CS provided MERIWETHER with $2,500 and received the suspected heroin directly from Meriwether. The transaction was completed at 11:31 a.m., when CS exited the vehicle and entered his/her vehicle. After the transaction, CS provided law enforcement a plastic bag which contained a total of 9 square like pieces of an off-white in color, substance. Law enforcement weighted and tested the controlled substance. The substance had a total weight of 50.4 grams and a positive test for Fentanyl. This information is consistent with information provided by CS that MERIWETHER

Page 8

sells a product MERIWETHER says is heroin but is "pure" fentanyl.

27.     Immediately following the transaction, law enforcement followed MERIWETHER and WILLIAMS to a restaurant identified as the Golden Nest Pancakes and Café located at 11250 W. Burleigh Street in the City of Wauwatosa.  Law enforcement was able to obtain pictures during this time verifying and showing MERIWETHER exiting the same black Mazda which just completed the drug transaction with CS.  Additionally, as part of the investigation into this DTO, law enforcement had previously learned the black Mazda was consistently operated by MERIWETHER.

28.     Law enforcement also obtained City of Waukesha Police Department reports from 2020 and 2021, which showed that MERIWETHER was dating Savanna WILLIAMS and that MERIWETHER was known to operate the same black Mazda 6.  MERIWETHER also admitted to investigators in a recorded interview in February of 2021, that he had and was currently selling heroin.

**b.  Second Undercover Transaction with MERIWETHER and WILLIAMS Using 414-999-6172 – July 8, 2022**

29.     On Friday, July 8, 2022, CS coordinated a purchase of approximately 50.2 grams of suspected heroin for $2,500 from MERIWETHER using telephone number 414-999-6172. CS spoken with the MERIWETHER and MERIWETHER had informed him/her that he had to go to Indiana, but his girlfriend (WILLIAMS) was going to complete the heroin transaction that morning. MERIWETHER instructed CS to go to the North Pointe Apartments, specifically at 9504 N. Green Bay Rd, where WILLIAMS is known to reside, and a residence previously associated with MERIWETHER. As CS was enroute to the location, he/she received another call from MERIWETHER indicating that WILLIAMS would now meet CS at the BP gas station located at 9051 N. Green Bay Rd.  The transaction was expected to take place at 12621 W. North Ave. in the

Page 9

City of Brookfield, Waukesha County, State of Wisconsin. Due to a change in location, the transaction eventually occurred at a location identified as a BP gas station located at 9051 N. Green Bay Rd. in the Village of Brown Deer. At approximately 12:00pm CS arrived at the lot. CS exited his/her vehicle and entered the black Mazda via the rear passenger door. CS provided the $2,500.00 to the front seat passenger who was identified as WILLIAMS. After providing the money to WILLIAMS, he/she was handed a small box which contained 9 squares/cubes of an off-white in color substance, similar to the first transaction. CS indicated that the unidentified black female operator of the vehicle handed the suspected heroin to him/her. CS indicated there was also a small child inside the Mazda. After completing the transaction, CS exited the Mazda and returned to his/her vehicle. CS met with law enforcement and turn oved the box containing suspected heroin. Law enforcement later weighed and tested the suspected heroin and received a total weight of 50.2 grams and a positive result for Fentanyl.

30.     Prior to the controlled drug buy, law enforcement arrived at the BP to conduct surveillance. Law enforcement observed the black Mazda 6, bearing Wisconsin registration AGJ-7529 in the parking lot of the BP. An unidentified black female operator exiting the car. Law enforcement also observed a front seat passenger in the Mazda and what appeared to be a child in a car seat located in the rear driver's side seat.

### c.   Identification of Dontrell Q. FRANKLIN

31.     On July 13, 2022, law enforcement met with CS. CS indicated that he/she was contacted by MERIWETHER who informed CS that MERIWETHER "plug" wanted to purchase a vehicle and requested CS to contact the "plug" about a vehicle CS was selling. MERIWETHER provided the telephone number of 414-412-6719 as his "plug". CS called the "plug" using telephone number 414-412-6719.

32.     During this investigation, I learned that the user of that phone number has been identified as Dontrell Q. FRANKLIN.  FRANKLIN was arrested by the United States Marshals Task Force (USMTF) on August 2, 2022, based on several outstanding arrest warrants from an unrelated incident.  During his arrest, FRANKLIN was in possession of a firearm, approximately $35,000.00 in United States Currency, and a cell phone with the number "412-6719" written on the back of the phone.  FRANKLIN was released from custody on August 26, 2022.  I also later confirmed with CS that FRANKLIN was the person he/she had met with prior in regard to purchasing a vehicle.

**d.  Third Undercover Transaction with MERIWETHER Using 414-999-6172 – August 3, 2022**

33.     On August 03, 2022, CS coordinated a purchase of approximately 50.0 grams of suspected heroin from MERIWETHER for $2500.00 using telephone number 414-999-6172. The transaction took place at 12621 W. North Ave. in the City of Brookfield, Waukesha County, State of Wisconsin.  During the controlled drug buy, MERIWETHER arrived alone, operating a 2017 Hyundai Elantra bearing Indiana registration 828YZ (Elantra).  MERIWETHER exited his vehicle and entered CS's vehicle and completed the transaction with CS.  During the transaction, MERIWETHER informed CS that he was going to Indiana for the next two weeks but would have additional heroin ready if CS needed it before MERIWETHER returned.  MERIWETHER informed CS that he would have someone else meet with CS if needed.  Then MERIWETHER exited CS's vehicle and entering his vehicle and departing the area.  I later weighed and tested the suspected heroin obtained from MERIWETHER and learned that the total weight was 50.5 grams and the substance later tested positive for Fentanyl.

**e.  Fourth Undercover Transaction with MERIWETHER and RODRIGUEZ-PEREZ Using 414-999-6172 and 512-940-1862 – August 15, 2022**

Case 2:22-mj-00544-SCD   Filed 10/07/22   Page 19 of 42   Document 1

34.     On August 15, 2022, CS coordinated a purchase of approximately 25.0 grams of suspected heroin from a target only known as "Rico". The controlled drug buy was completed at the direction of MERIWETHER using telephone number 414-999-6172. MERIWETHER informed the CI that he had directed "Rico" to complete the transaction of 25.0 grams of heroin in exchange for $1,250. The transaction took place at 12419 W. Hampton Ave in the Village of Butler, Waukesha County, State of Wisconsin. During the transaction, "Rico" arrived alone, operating a 2009 Dodge Avenger bearing Wisconsin registration ALT-3171, which listed to an address identified as 3122 North 21st Street in the City of Milwaukee. Prior to the transaction, MERIWETHER had provided a contact name and number for "Rico". The number was identified as 512-940-1862 and the name "Perez Efigenia" was associated with that number on the shared contact by MERIWETHER. Upon arriving at 12419 W. Hampton Ave, CS approached the Dodge Avenger in which a Hispanic male was inside and asked if he was "Rico". The unknown male stated yes, and CS entered the Dodge Avenger and completed the transaction with the male. I later weighed and tested the suspected heroin obtained from "Rico" and learned the total weight was 25.0 grams and the substance later tested positive for Fentanyl.

35.     After the transaction, law enforcement followed the male, still operating the same Dodge Avenger, back to the address listed for the registered owner (Shannone Brown) which was the 3122 North 21st Street. I was able to positively identify "Rico" as Daniel RODRIGUEZ-PEREZ utilizing open-source records and cell phone subscriber information. I obtained a Texas Photo Identification Card and after reviewing surveillance photos/video that was obtained during the transaction, confirmed that the subject who conducted the transaction was in fact Daniel RODRIGUEZ-PEREZ.

**f. Fifth Undercover Transaction with MERIWETHER and RODRIGUEZ-PEREZ Using 414-999-6172 and 512-940-1862 – August 22, 2022**

36.     On August 22, 2022, CS coordinated a purchase of approximately 25.4 grams of suspected fentanyl for $1,250 from RODRIGUEZ-PEREZ, "Rico", using telephone number 512-940-1862.  The transaction was completed at the direction of MERIWETHER using telephone number 414-999-6172.   MERIWETHER had contacted CS earlier on the morning and informed CS that his crew was attempting to sell off their large quantities of heroin so they could obtain a large amount of cash to post bail for an individual, believed to be FRANKLIN based on their conversations and FRANKLIN's recent arrest. MERIWETHER informed CS that he was still in Indiana but stated that "Rico" (RODRIGUEZ-PEREZ) would conduct the transaction. Later in the afternoon CS drove to the meet location of 12419 W. Hampton Ave in the Village of Butler, Waukesha County, State of Wisconsin. RODRIGUEZ-PEREZ arrived in a 2009 Dodge Avenger, bearing Wisconsin Registration ALT-3171.  This was the same vehicle that RODRIGUEZ-PEREZ was operating during the controlled drug buy on August 15, 2022. There was an unidentified black female who was in the front passenger seat at the time of the transaction. During the transaction RODRIGUEZ-PEREZ entered CS's vehicle and completed the transaction. I later weighed and tested the substance and obtained a total weight of 25.4 grams.  The substance tested inconclusive for heroin but did test positive for fentanyl.

g.  **Sixth Undercover Transaction with MERIWETHER and NICHOLS Using 414-999-6172 – August 29, 2022**

37.     On August 29, 2022, law enforcement conducted an undercover controlled buy. During the undercover controlled buy, CS, and an Undercover Law Enforcement Agent (UC) made arrangements to purchase 111.4 grams of fentanyl, one Glock auto rear switch, and a Glock .45 caliber handgun from MERIWETHER using telephone number 414-999-6172.  The undercover controlled buy took place at 3716 West North Ave in the City of Milwaukee, Milwaukee County,

Page 13

State of Wisconsin.  This location is the address of a barber shop identified "Cuttinup Crew".  During the investigation into the ADTO, "Cuttinup Crew" was identified as a location where MERIWETHER is known to frequent.  During the transaction, MERIWETHER entered the UC's vehicle, where CS was the front seat passenger.  The original transaction was for the Glock auto rear switch, but when MERIWETHER entered the vehicle, he informed the UC that someone was bringing the "switch".  During this time, MERIWETHER completed the transaction of fentanyl FOR $2500 with CS.  The UC and MERIWETHER began discussion regarding a handgun that was on MERIWETHER's person.  MERIWETHER eventually agreed to sell the handgun, which was identified as a Model 21, Glock .45 Caliber handgun. A short time later a subject, later identified as Brandon M. NICHOLS through social media, arrived at the location.  NICHOLS provided MERIWETHER a bag that contained the "switch" and MERIWETHER subsequently completed the transaction with the UC.  The suspected controlled substance was weighed and tested.  The substance weighed a total weight of 111.4 grams and tested positive for fentanyl.  Law enforcement with Alcohol Tabaco and Firearms (ATF) later test fired the "switch" provided by NICHOLS and MERIWETHER.  It was determined that the "switch" converted a semi-automatic firearm into a fully automatic firearm, meaning one pull of a firearm trigger caused the firearm to fire multiple bullets.

38.     Following the undercover drug and gun transaction, law enforcement reviewed social media accounts and phone records.  Based on the review of these materials law enforcement located photos of NICHOLS associated with NICOLS' social media account.  These photos were consistent with the subject that arrived during the undercover transaction and provided MERIWETHER with the switch, which was then provided to the UC.

**h.  Sixth Undercover Transaction with MERIWETHER and NICHOLS Using 414-999-6172 – September 12, 2022**

Page 14

39.     On September 12, 2022, CS and the UC arraigned for an undercover drug and firearm purchase with MERIWETHER using telephone number 414-999-6172.  CS and the UC arranged with MERIWETHER to purchase 25.9 grams of fentanyl, four (4) firearms, and a Glock auto-sear switch for a total of $5,250.  The undercover buy took place at 3709 North 24th Street in the City of Milwaukee, Milwaukee County, State of Wisconsin.  During the transaction, MERIWETHER entered the UC's undercover vehicle and completed a sale of four (4) firearms and a Glock auto-sear switch with the UC.  The UC purchased the following firearms and Glock switch during the transaction in exchange for $4,000:

 i.     NAK9 (Draco), 9 MM, Century Arms with serial number RON216548;
 ii.    RF-15, multi caliber, Radical Firearms, LLC with serial number 21-105263;
 iii.   PT111 Millennium G2, 9 mm, Taurus with serial number TKM53277; and
 iv.    Bodyguard, 38 special, Smith & Wesson with serial number CPX2831.

40.     During the same transaction, MERIWETHER completed the sale of 25.9 grams of fentanyl to CS in exchange for $1,250. The suspected controlled substance was weighed and tested.  The substance weighed a total weight of 25.9 grams and tested positive for fentanyl.

41.     Prior to the transaction, law enforcement observed MERIWETHER at the rear of his vehicle with the trunk open.  This vehicle was the same vehicle MERIWETHER was operating during a previous transaction and is known to be operating at this time, the Elantra.  There was a second individual with MERIWETHER during the transaction, and this individual was identified by CS as Dontrell FRANKLIN.  MERIWETHER informed CS during the transaction that this location is where his "cousin" (FRANKLIN) resides, and MERIWETHER was heard confirming the address when asked by CS where he (MERIWETHER) was just prior to the transaction.

Page 15

MERIWETHER was observed by CS to be in possession of "half a brick" of heroin during the transaction and later called the UC and discussed additional firearms that FRANKLIN had for sale.

### i. Seventh Undercover Transaction with MERIWETHER using 414-999-6172 – September 22, 2022

42.     On September 19, 2022, CS contacted MERIWETHER at phone number 414-999-6171.   MERIWETHER informed CS that he would be returning to the Eastern District of Wisconsin and is prepared to sell heroin to CS.  MERIWETHER further stated he had additional firearms, including one with a switch, and "clear" to sell to the UC.  Based on my training and experience, I know "clear" to be a street term used by drug traffickers for methamphetamines MERIWETHER indicated he would be traveling back to Wisconsin either on September 20 or 21, 2022. to complete this drug and firearm buy.  Based on prior conversation with MERIWETHER, he is currently not on good terms with WILLIAMS and has not been for several of the prior undercover controlled purchase.   This is consistent with MERIWETHER no longer using WILLIAMS's Mazda during the drug buys, but instead using the Elantra or other co-conspirators' vehicles.

43.     On September 22, 2022, CS and UC were driving to meet MERIWETHER to conduct the undercover controlled drug and gun buy.  CS received a call from MERIWETHER at number 414-999-6172.  MERIWETHER instructed CS and UC to meet at 3907 North 24th Street, Milwaukee, WI.  CS and UC arrived at the location and parked behind MERIWETHER's Elantra. MERIWETHER was outside the Elantra, and FRANKLIN was later observed inside the front passenger seat of the Elantra.  CS initially got out of the vehicle to approach MERIWETHER, but MERIWETHER directed CS to return to the vehicle.  MERIWETHER and CS then returned to UC's vehicle and MERIWETHER brought an AR-style pistol, Freedom Ordinance, FX-9; multi caliber bearing serial number 010897 with an extended magazine, and a Glock 19X, 9mm bearing

Page 16

serial number BKCC540, and a Glock 21, .45 bearing serial number XNS459 with a switch attached, which converted the Glock to fully automatic, a machinegun. CS provided MERIWETHER $2500 and MERIWETHER provided CS with 50.1 grams of heroin to the CS. UC was inspecting the firearms during this time. UC was looking at the Glock 19X with the switch. UC noticed the switch was different than the prior switched purchased during the undercover controlled buy on September 12, 2022. MERIWETHER stated the FRANKLIN go the previously switch from Texas, that FRANKLIN also has a Glock switch source in Kentucky, who uses a 3D printer. MERIWETHER discussed also selling a Taurus revolver Judge .45 shotgun to UC. UC provided $4000 for the three firearms brought by MERIWETHER. MERIWETHER then informed the UC he had also sold all his methamphetamines. MERIWETHER then discussed a future sale of methamphetamines with UC and also discussed FRANKLIN's prior arrest. UC requested to purchase heroin from MERIWETHER, since he no longer had methamphetamines to sell. MERIWETHER went back to his Elantra, where FRANKLIN was still seated and then returned to UC's vehicle. MERIWETHER handed UC his hat, which continued about 6.66 grams of heroin. UC provided MERIETHER his hat and $300. UC and CS then left the area.

44.     Case agent later field tested the heroin which tested positive for fentanyl.

45.     Case agents also reviewed MERIWETHER's call detail records from September 22, 2022. Just prior to meeting with CS and UC, MERIWETHER call telephone number **414-254-8676.**

### C.  Surveillance of ADTO Members

46.     As part of the investigation into the ADTO, law enforcement reviewed ADTO members' public social media accounts, reviewed jail calls, conducted surveillance and reviewed call detail records. Based on the controlled and undercover controlled buys of drugs and firearms

and review of the other materials obtained from investigators, law enforcement was able to verify and identify other members of the ADTO.

47.     I obtained detailed cellular phone records for telephone numbers of MERIWETHER, 414-999-6172, FRANKLIN, 414-412-6719, and RODRIGUEZ-PEREZ 512-940-1862.  While reviewing the records, I documented that there were hundreds of contacts between all three numbers, with the majority of the contacts between FRANKLIN and RODRIGUEZ-PEREZ.  While reviewing contacts between the calls, another number identified as 414-426-0464 was identified as a number of interests.  There was a total for 235 contacts between 414-426-0464 and RODRIGUEZ-PEREZ (512-940-1862) from June 28, 2022, to August 28, 2022.  Between June 25, 2022, and July 17, 2022, there were 254 contacts between 414-426-0464 and FRANKLIN (414-412-6719).

48.     Law enforcement reviewed FRANKLIN's jail calls while he was in custody at the Milwaukee County Jail.  FRANKLIN was found to make several calls to 414-426-0464 and speak with a male who is believed to be RODRIGUEZ-PEREZ based on comparisons of the caller's voice and the voice of RODRIGUEZ-PEREZ during the controlled drug buys.  One jail call between FRANKLIN and RODRIGUEZ-PEREZ (414-426-0464) discussed a shooting that occurred on August 8, 2022, where unknown suspects shot multiple rounds into a residence located at 3261 North 29th Street in the City of Milwaukee.  RODRIGUEZ-PEREZ informed FRANKLIN that the Police Department came to the residence located at 3265 North 29th Street and asked if they could search the house but they were not allowed to do so.  Law enforcement reviewed Milwaukee Police report 22-220-0158 and confirmed a shoot at 3261 North 29th Street as discussed in the call.  RODRIGUEZ-PEREZ then told FRANKLIN that everything had been removed from the house on the 29th.  I had previously learned that the residence located at 3265 North 29th Street

Case 2:22-mj-00544-SCD   Filed 10/07/22   Page 26 of 42   Document 1

was believed to be a "Stash house" where it was believed to contain large amounts of illegal narcotics and United States Currency. Law enforcement became aware of this information, while USMTF was conducting surveillance at 3265 North 29th Street. During their surveillance members of the USMTF observed several hand-to-hand transactions and observed individuals walk up to the residence and meet with an unidentified female. These individuals would provide large amounts of what appeared to be United States Currency to the female in plain view. Based on my training and experience, this conduct is consistent with drug sales being conduct from this residence. Further, CS stated that there was a "stash house" but he did not know the exact location. At the time of FRANKLIN's arrest, he was observed leaving that residence and was in possession of $35,000.

49.    Law enforcement also reviewed publicly available Instagram records belonging to MERIWETHER. On August 06, 2022, there was a conversation between "thereal_chefdon92" (MERIWETHER) and "lele_richvibez" (Unknown subject) where the unknow subject sends MERIWETHER a message stating "Finna call u I need sum more". MERIWETHER responds that he's in Kentucky and later sends another message to the unknown subject stating "NBS let me call somebody rq" and "And Que got some of that shit too he gone prolyl want like 50 tho". I know that MERIWETHER has referred to FRANKLIN as "QUE" or "Q" in other conversations with CS and in MERIWETHER's Instagram messages. After multiple video chats between the parties, MERIWETHER sends "1-414-426-0464" to the unknown subject. The two parties then discuss "200 a gram" and "nothing but hypes" who want "grams". Based on my training, experience, and investigation into the ADTO, these conversations are consistent with discussion of weights and prices of heroin. The parties also discuss selling suspected heroin in Minnesota and Ohio because of the prices they could charge in those areas.

Page 19

**D. Franklin's Phone Extraction**

50.     FRANKLIN in possession of two cell phones during his arrest by USMTF.  I obtained a state search warrant to conduct a forensic download of download of both cell phones. Law enforcement identified telephone number a 414-412-6719 as one of the devices.  On 414-412-6719 there was communication with a subject identified in the contact list as "Alex" with a phone number of 414-676-0097.  During the review of text messages, there was content on July 8, 2022, were FRANKLIN and another individual, later identified through Wisconsin Department of Corrections (DOC) records as Antonio E. HOWARD, travel to a location identified as a Sam's Club located at 101 W. Oakton Street in Des Plaines, IL.  Law enforcement searched through the DOC database for telephone number 414-501-9512 and this number was provided by HOWARD as his telephone number.

51.     The reason for traveling to that location was for FRANKLIN and HOWARD to pick up what was believed to be three pounds of marijuana from "Alex".  This belief was substantiated by reviewing numerous text message communications between FRANKLIN and "Alex".  The conversation centered around FRANKLIN purchasing narcotics from "Alex" and began on July 2, 2022, and continued through July 8, 2022, when FRANKLIN traveled to Des Plaines, IL. During the conversation, FRANKLIN indicated that he would like to purchase cocaine rather than marijuana. Based on my training, experience, and investigation into this ADTO and messages between FRANKLIN and "Alex", when the two spoke regarding prices of what is believed to be kilograms of cocaine FRANKLIN argued with "Alex", stating he gets better prices when he travels to Texas.

52.     Here is a summary of FRANKLIN's and "Alex's" (414-676-0097) conversation from July 2, 2022. FRANKLIN inquired with "Alex" as to the status of his narcotics stating, "my

people got money ready".  The conversation continued and "Alex" indicated that he, "got the grass" and that he "need(ed) to cash out 3".  FRANKLIN responded by asking, "Ok so what's going on wit gurl they on my heals". It appears "Alex" continued to try and sell FRANKLIN marijuana however FRANKLIN again stated, "Bro Im cool on the weed I rather spend money on gurl". FRANKLIN stated that he had $50,000 and inquired as to if he could purchase kilograms of cocaine for $19,000 each.  The two seem to disagree regarding prices and FRANKLIN stated, "Bro u on some bullshit I'm just bout to go Texas", indicating that he has a source of supply for cocaine in the state of Texas. Ultimately, FRANKLIN agreed to meet "Alex" to purchase three pounds of marijuana for an unknown price.  "Alex" directed FRANKLIN to 101 W Oakton St, Des Plaines, IL 60018. Based on messages between the two, FRANKLIN subsequently drove to that address however after waiting several hours for "Alex" to arrive, leaves without meeting him. I am aware that the address lists to a Sam's Club warehouse retails store. Based on my training and experience he knows that the term "grass" is commonly used to refer to marijuana and the term "gurl" is commonly used to refer to cocaine.

53.     On the morning of July 8, 2022, FRANKLIN texted the contact "Smoke 61st Marion", phone number 414-501-9512, "puking up gotta hit road". The two subsequently traveled to the Sam's Club warehouse retail store in Des Plaines Illinois. Through the DOC database, "Smoke 61st Marion" was identified as a nickname for HOWARD.  Law enforcement also determined HOWARD resides near 61st and Marion.

54.     Law enforcement also reviewed text messages between FRANKLIN and Tasha BROWN, who identified herself as FRANKLIN's girlfriend to USMTF.  FRANKLIN also identified BROWN as his girlfriend to USMTF.  Messages on between FRANKLIN and BROWN were consistent with BROWN participating with FRANKLIN'S drug activities. On July 19, 2022,

BROWN received a text message from FRANKLIN directing BROWN to place, "7g of hard on a scale". Shortly after receiving the instruction BROWN replied with a photograph of suspected crack cocaine, placed on a digital scale which read 7.02 grams.

55.     Case agents also located on FRANKLIN's Phone extraction the number 1-414-426-0464 with listed contact "My Boi Rico".

### E.  Jail Calls Willie SHAW

56.     Based on the telephone numbers connected with the DTO, case agent attempted to connect any of the DTO's cellphone numbers to possible calls with inmates. Case agents located calls made between Racine County inmate Willie C. SHAW (DOB XX/XX.1991) and another telephone associated with the ADTO (414-254-8676). Case agents then listen to several record jail calls with SHAW and telephone number 414-519-9779. Case agents reviewed Wisconsin DOC records which indicated telephone number 414-519-9779 is a telephone number of Venus Brown and Mary Brown, listed sisters of SHAW. During a call between SHAW and 414-519-9779, SHAW asked where "Tasha" was located.

57.     On September 16, 2022, SHAW calls 414-888-0699. Based on the conversation, the female SHAW was talking with appeared to be his mother. During the conversation, SHAW's mother added another female by the nickname "Boola" into the call. SHAW asked about "Tasha" and what was her telephone number. In the background another female's voice can be heard, and SHAW yelled "Tasha!". The female responded, "Yeah?" SHAW asked the female why he has not been able to get in touch with her over the phone and she advised him that she does not have a phone.[1] SHAW eventually asked "Tasha" for a number that he could call her at, and Tasha

---

[1] This is consistent with law enforcement taking Tasha BROWN's cellphone during FRANKLIN's arrest on August 2, 2022.

provided the phone number **414-254-8676**.

58. On September 17, 2022, SHAWS calls **414-254-8676**. SHAW spoke to a female. SHAW and the female discussed several ongoing investigations, including an incident involving a person by the nickname Red getting into an argument and getting "heat", believed to be a firearm. The female informed Shaw that "Rico pulled up" (Rico is the nickname of RODRIGUEZ-PEREZ) and they drove to the area of 42nd and Auer and each "shot 5 times in the air". The female then stated that the "hoes came back and shot up a house". The female stated that afterwards "Detectives went up and down the block talking to people and Red told them it was Tasha BROWN and later received a call from Red telling her the Police were looking for me".

59. SHAW then asked the female "who lives on 29th. Based on review of Wisconsin DOC records and Wisconsin Circuit Court records regarding SHAW and the investigation into this DTO, case agents determined SHAW was referencing the address in which he was formerly residing at, 3265 N. 29th Street. The female responded "nobody". SHAW and the female discussed a vehicle and items being taking from a vehicle. SHAW asked BROWN "who are the little nigga's that Dontrell is fucking with they on shit?" The female responded, "He just fuck with the Mexican" and Shaw asked, "What's the Mexican on?". The female responded, "He be getting down bro". Shaw then asked about who was staying with another person and the female responded, "That's him, the Mexican Rico". The female then told SHAW that he will be "serving his cousins" when he gets out.

60. Based on the content of the phone and the investigation into this DTO, case agents determine the female caller to be BROWN. Specifically, during the call BROWN discusses how "Red" told on Tasha Brown. BROWN then reference "me" in relation to the police looking for BROWN. Additionally, SHAW discussed "Dontrell", which is BROWN's boyfriend, Dontrell

FRANKLIN's name.  Lastly, it should be noted that "Rico" has been identified as nickname for RODRIGUEZ-PEREZ.  Also, RODRIGUEZ-PEREZ is known to reside at 3122 N. 21st Street in Milwaukee, with Shannone Brown, SHAW's sister according to Wisconsin DOC records.

### F.  Additional information as to TARGET CELL PHONE

61.     On October 3, 2022, case agents queried "**414-254-8676**" via a law enforcement database, which identified the mobile carrier as US Cellular.

62.     Additionally, case agents reviewed call detail records between **414-254-8676** and 414-999-6172 (MERIWETHER).  In the last thirty days, **414-254-8676** has had 102 contacts with MERIWETHER, including the call proceeding the undercover controlled buy on September 22, 2022, as described above.

### III.     JURISDICTION

63.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

### IV.     TECHNICAL BACKGROUND

64.     Based on my training and experience, I know that Service Provider can collect historical and prospective cell-site data and historical and prospective E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Service Provider's network or with such other reference points as may be reasonably available.

### A. Cell-Site Data

Page 24

65.     In my training and experience, I have learned that Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

66.     Based on my training and experience, I know that Service Provider can collect cell-site data on a historical and prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business to use this information for various business-related purposes.

**B. E-911 Phase II / GPS Location Data**

67.     I know that some providers of cellular telephone service, including Service Provider, have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

68.     As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

69.     I also know that certain wireless providers, such as Service Provider, can provide precision location information, also known as estimated location records or historical handset location data, on both a historical and prospective basis. Each provider refers to its proprietary estimates of a cellular device's location differently. This information, however, is sometimes referred to as geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time or real-time tool (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

70.     Based on my training and experience, I know that Service Provider also can collect per-call measurement data, which Service Provider also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based

upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

71. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

### C. Pen-Trap Data

72. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

### D. Subscriber Information

73. Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number)

provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.

74.     In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify Target Cell Phone' user or users, the locations of that user or users, and the patterns of that user or users. A frequency analysis of the telephone communications between Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Savanna WILLIAMS, Daniel RODRIGUEZ-PEREZ, Brandon M. NICHOLS, Antonio E. HOWARD, Tasha M BROWN and other identified and unidentified subjects is material, in that it can establish whether the calls described above are a deviation from their normal patterns of communication. The frequency analysis of the locations associated with the cellular devices can establish whether the locations are deviations or consistent with normal patterns. This information is relevant to show whether Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Savanna WILLIAMS, Daniel RODRIGUEZ-PEREZ, Brandon M. NICHOLS, Antonio E. HOWARD, Tasha M BROWN and others acted-in-concert, by establishing the nature and extent of their relationship, the existence and scope of the conspiracy, the pattern of their communications, their patterns of travel, and any deviations from those patterns.

## V. AUTHORIZATION REQUEST

75.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

76.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

77.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the locations of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.   The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

78.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

**ATTACHMENT A**
**Property to Be Searched**
**Matter Number 2022R355**

1.      Records and information associated with the cellular device assigned call number

**414-254-8676** (referred to herein and in Attachment B as the "Target Cell Phone"), that is in the

custody or control of US Cellular referred to herein and in Attachment B as the "Service Provider")

a wireless telephone service provider headquartered at 8410 W. Bryn Mawr Avenue, Chicago,

Illinois 606631.

2.      The Target Cell Phone.

Case 2:22-mj-00544-SCD   Filed 10/07/22   Page 38 of 42   Document 1

**ATTACHMENT B**
**Particular Things to be Seized**
**Matter Number 2022R355**

I.  **Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.  The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from January 1, 20221 to present:

   i.  Names (including subscriber names, usernames, and screen names);

   ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.  Local and long-distance telephone connection records;

   iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.  Length of service (including start date) and types of service utilized;

   vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with

Page 33

such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.** This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**III.     Information to be Seized by the Government**

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of possession of a machinegun, distribution and possession with intent to distribute controlled substances, and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 18 United States Code Section 920(o) and Title 21, United States Code, Sections 841 and 846, which have been committed by Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Savanna WILLIAMS, Daniel RODRIGUEZ-PEREZ, Brandon M. NICHOLS, Antonio E. HOWARD, Tasha M BROWN ,and other identified and unidentified subjects during the period of January 1, 2022 to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

Case 2:22-mj-00544-SCD   Filed 10/07/22   Page 42 of 42   Document 1